UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHANTAL E., | ) |
| | ) |
|        **Plaintiff** | ) |
| | ) |
| v. | )   No. 2:22-cv-00126-NT |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
|        **Defendant** | ) |

**REPORT AND RECOMMENDED DECISION**

The Plaintiff in this Social Security Disability appeal contends that the Administrative Law Judge (ALJ) erred by assessing a residual functional capacity (RFC) unsupported by substantial evidence. *See* Statement of Errors (ECF No. 11). I agree and recommend that the Court vacate the Commissioner's decision and remand this case for further proceedings consistent with this decision.

**I. Background**

The Plaintiff applied for benefits in November 2019. *See* Record at 16. After her claim was denied at the initial and reconsideration levels, she requested a hearing before an ALJ. *See id.* That hearing took place in June 2021, *see id.* at 56-100, following which the ALJ issued a decision finding that the Plaintiff had the severe impairments of post-concussion syndrome; spine disorders; obesity; depressive, bipolar, and related disorders; anxiety disorder; neurocognitive disorder; and

1

attention deficit/hyperactivity disorder, *see id.* at 16-30. The ALJ went on to find that the Plaintiff had the RFC to

> perform light work as defined in 20 [C.F.R. §] 404.1567(b) except that [she] can frequently, but not always, climb stairs, stoop, kneel, and crouch. She can only occasionally crawl. She can never climb ladders. She can have only occasional exposure to extreme cold. She can have no exposure to sustained, loud noises. She can have no more than frequent exposure to vibration. She can have no more than occasional exposure to workplace hazards, such as unprotected heights or dangerous machinery. She can have no exposure to bright lights. She can frequently, but not always, twist the cervical spine or head. She is limited to reasoning, math and language skills up to a GED [(General Educational Development)] level of three. She is limited to performing only simple, repetitive and routine tasks. She is limited to only nonproduction-paced tasks as to tempo and capacity (*i.e.*, non-assembly line work or work with piece quotas). She is limited to maintaining a persistent effort on only routine tasks. She is limited to only rare interaction with the public; but she may be in the presence of the public. She is limited to only occasional interaction with co-workers and supervisors. She is limited to tolerating only occasional changes in tasks or the work setting and is limited to having to make only routine, work-related decisions.

*Id.* at 22 (footnotes omitted).

Ultimately, the ALJ concluded that the Plaintiff could not return to her past relevant work with such an RFC but that she could perform other jobs existing in significant numbers in the national economy and that she was therefore not disabled. *See id.* at 28-30. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id.* at 1-3, making that decision the final determination of the Commissioner. *See* 20 C.F.R. § 404.981.

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial

evidence. *See* 42 U.S.C. § 405(g); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### III. Discussion

Agency nonexamining consultants Jo McClain, Psy.D., and Richard J. Milan, Jr., Ph.D., reviewed the Plaintiff's claim at the initial and reconsideration levels respectively and made largely identical mental RFC assessments that, ultimately, the Plaintiff would be able to perform "simple, routine work with modest social demands." Record at 101-13, 117-35.

Karen L. Russell, Psy.D., performed a consultative examination of the Plaintiff. *See id.* at 1181-86. Among other things, Dr. Russell administered the Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV), and the Wechsler Memory Scale, Fourth Edition (WMS-IV) tests on the Plaintiff. *See id.* at 1181, 1183-85. Dr. Russell opined, based on her examination, that the Plaintiff

> would have difficulties with concentration and attention levels because of her working memory deficits if she were to have to endure a full workday. Her anxiety level would also contribute to her precarious state when interacting with numerous people or with various demand[s] at a

3

> work setting. The undersigned believes that [the Plaintiff] does have some strong intellectual capacity and would likely benefit from returning to work on a part-time basis. She will likely benefit from some rest times between activities.

*Id.* at 1186.

The Plaintiff's treating providers, Madison Brown, PA-C, and Gregory O'Shanick, M.D., also provided a joint opinion indicating that the Plaintiff had many mental RFC limitations. *See id.* at 1327-32. They explained,

> [The Plaintiff] suffers from significant attention deficits as well as fatigue. She utilizes maximum cueing within her home to complete ADLs [(activities of daily living)] and must take frequent, regular breaks. She may have entire days where no useful activities occur[.] She requires assistance with any multifactorial problem solving. When experiencing anxiety, all cognitive deficits worsen.

*Id.* at 1329.

The ALJ was not entirely persuaded by any of these opinions. He noted that he found the opinions of Drs. McClain and Milan "somewhat persuasive overall," but that he "further limited" the Plaintiff "in light of the evidence received at the hearing level and by taking into account her testimony." *Id.* at 27. He was also "partially" persuaded by the Brown/O'Shanick and Russell opinions but found that they both overstated the Plaintiff's symptoms and limitations based on the other evidence of record. *Id.* at 27-28.

The Plaintiff argues that the ALJ overstepped his expertise as a layperson by substituting his own opinion of her mental limitations for those of the medical experts of record. *See* Statement of Errors at 14. She contends that after the ALJ discounted the opinions of the agency nonexamining consultants for being "inadequately

4

restrictive," he erred by assessing "extensive additional mental limitations that were inconsistent with all the other medical opinion evidence." *Id.* at 15. In particular, she asserts that the ALJ substituted his own evaluation of her intelligence and memory testing when assessing her mental RFC. *See id.* at 16.

The Commissioner counters that what the Plaintiff decries as the ALJ substituting his own judgment for that of the medical experts was actually the ALJ fulfilling his duty to resolve conflicts in the evidence. *See* Opposition (ECF No. 13) at 10-17. She argues that, in the end, the ALJ permissibly "chose to incorporate" the "limitations offered by" Drs. McClain and Milan and then "went even further than their findings would compel" by including "additional limitations to account for" the "Plaintiff's subjective complaints." *Id.* at 13-14, 16-17.

The Plaintiff has the better argument, but I nevertheless begin my analysis by generally agreeing with the Commissioner on three points of law. First, ALJs do have a duty to weigh the evidence and resolve conflicts therein. *See, e.g., Rodriguez v. Sec'y of Health & Hum. Servs.*, 647 F.2d 218, 222 (1st Cir. 1981) (noting that it is the ALJ's role to draw inferences from and resolve conflicts in the evidence). Second, ALJs do not exceed the bounds of their expertise when they weigh whether a medical expert's opinion is consistent with other evidence in the record; indeed, the regulations require them to do so. *See* 20 C.F.R. 404.1520c (providing that medical opinions must be evaluated based on, among other things, their consistency with other evidence). And third, ALJs are not obligated to rely entirely on one medical expert's opinion when formulating a claimant's RFC but rather are free to pick and choose from among

5

multiple experts' opinions. *See Tabetha S. B. v. Saul*, No. 1:18-cv-00445-JHR, 2019 WL 5866068, at *5 (D. Me. Nov. 8, 2019) ("This court has held that an ALJ may not only pick and choose among different experts' opinions but also adopt only a portion of an expert's opinion." (cleaned up)).

But these three legal principles are all subject to another equally important one: "an ALJ may not substitute his or her judgment for that of an expert, nor translate raw medical data into an RFC assessment." *Dustin T. v. Saul*, No. 1:20-cv-00310-GZS, 2021 WL 3047257, at *5 (D. Me. July 20, 2021) (rec. dec.), *aff'd*, 2021 WL 3494590 (D. Me. Aug. 9, 2021).

Here, with no expert opining as such, the ALJ limited the Plaintiff to, among other things, GED reasoning level three, nonproduction paced work, and only routine changes in the workplace. Record at 22. In so departing from the experts, the ALJ stated that he relied in part on "evidence received at the hearing level" and, as the Plaintiff points out, he also seemed to rely in part on his own interpretation of the functional implications of Dr. Russell's intelligence and memory testing. *Id.* at 26-27 (explaining that he accounted for the Plaintiff's working memory deficits by limiting her to nonproduction paced work but declining to adopt more severe limitations because of her "generally good IQ scores and overall memory testing"). Simply put, these things demonstrate that the ALJ improperly substituted his judgment for that of the medical experts and relied on his own interpretation of the raw medical evidence.

Contrary to the Commissioner's arguments, the ALJ was not merely resolving conflicts in the evidence when he assessed these limitations. This was not a situation where the ALJ was choosing between experts opining that the Plaintiff had these limitations and other experts opining that said she did not; rather, as mentioned, no expert opined that the Plaintiff had these specific limitations. *Cf. Libby v. Astrue*, No. 2:10-cv-292-JAW, 2011 WL 2940738, at *11 (D. Me. July 19, 2011) (rec. dec.) (holding that an ALJ "did not substitute her judgment for that of the experts" when she "resolved conflicts in the expert medical evidence" by choosing between two disparate opinions), *aff'd*, 2011 WL 3715087 (D. Me. Aug. 24, 2011), *aff'd*, 473 F. App'x 8 (1st Cir. 2012). And to the extent the Commissioner is suggesting that the ALJ properly resolved the conflicts between Drs. McClain's and Milan's less restrictive RFC opinions and PA Brown/Dr. O'Shanick's and Dr. Russell's more restrictive RFC opinions by assessing an RFC that falls somewhere in between, this Court has rejected the idea that an ALJ is qualified to split the difference between disparate expert opinions in such a way. *See Kaylor v. Astrue*, No. 2:10-cv-33-GZS, 2010 WL 5776375, at *4-5 (D. Me. Dec. 30, 2010) (rec. dec.) ("In rejecting [one] RFC opinion as overestimating the [claimant's] functional capacities and the [other] RFC opinion as underestimating them, the [ALJ] necessarily crafted an RFC assessment in part from her own assessment of the raw medical evidence."), *aff'd*, 2011 WL 487844 (D. Me. Feb. 7, 2011); *see also Bubar v. Astrue*, No. 11-cv-107-JL, 2011 WL 6937507, at *5 (D.N.H. Dec. 5, 2011) (rec. dec.) ("[A]n ALJ is generally not

7

permitted to adopt a limitation in his RFC that has not been directly stated as an opinion by an expert."), *aff'd*, 2011 WL 6937476 (D.N.H. Dec. 30, 2011).

That the ALJ may have also partly credited some of the Plaintiff's subjective complaints when assessing these limitations does not obviate his error in substituting his own judgment for that of the medical experts. *See Kenneth A. W. v. Kijakazi*, No. 1:20-cv-00419-GZS, 2022 WL 278469, at *4 (D. Me. Jan. 30, 2022) (rec. dec.) ("That the ALJ may have also partially credited the plaintiff's subjective complaints . . . does not render his error in interpreting the later-submitted evidence harmless."), *aff'd*, 2022 WL 458268 (D. Me. Feb. 15, 2022). This Court has affirmed decisions in which an ALJ has departed from expert opinions by permissibly crediting the claimant's subjective complaints, but only when it was reasonably clear that the ALJ did not do so based on his own interpretation of the medical evidence. *See, e.g.*, *Kristina D. B. v. Berryhill*, No. 1:18-cv-00088-JHR, 2019 WL 1407407, at *3-4 (D. Me. Mar. 28, 2019) (affirming an ALJ's decision where it was reasonably clear that the ALJ rejected expert opinions not because of later submitted evidence but because she chose to credit some of the claimant's subjective allegations); *Black v. Berryhill*, No. 1:16-cv-00572-JAW, 2017 WL 4220116, at *7-8 (D. Me. Sept. 22, 2017) (rec. dec.) (affirming an ALJ's decision even when he discounted expert opinions on the basis of later submitted evidence because it was fairly clear that the later submitted evidence he was referencing was the plaintiff's own testimony rather than raw medical evidence), *aff'd*, 2018 WL 1518843 (D. Me. Mar. 28, 2018). Here, for the reasons outlined above, it is not clear that the ALJ

departed from the medical experts based solely on a permissible crediting of the Plaintiff's subjective complaints.[1]

The Commissioner also attempts to salvage the ALJ's decision by highlighting the fact that Dr. Milan reviewed the Brown/O'Shanick and Russell opinions and assessed an RFC less limiting than the ALJ; she seems to argue, in effect, that this means the ALJ assessed an RFC more favorable than the evidence would otherwise support. *See* Opposition at 1-2. 10-11. This argument founders because, again, the ALJ was not fully persuaded by any expert opinion—including Dr. Milan's—and substituted his own judgment for those experts by assessing limitations based on his own view of the evidence. In such circumstances, he cannot be said to have assessed an RFC that was more favorable than the evidence would otherwise support. *See, e.g., Kenneth A. W.*, 2022 WL 278469, at *4 ("Because the ALJ's findings regarding the functional impact of the [claimant's] headaches were not supported by any medical opinion and were not merely the result of a permissible partial crediting of the [claimant's] subjective complaints, they are not more favorable than the evidence would otherwise support.").

At bottom, the ALJ assessed an RFC that is unsupported by substantial evidence, and remand is required. *See id.* at *5 (holding that remand was required when an ALJ's RFC was unsupported by substantial evidence because it "undermined the relevance of the vocational expert testimony on which the ALJ relied in finding

---

[1] These circumstances undermine the Commissioner's attempt to liken this case to *Black*. *See* Opposition at 9-10.

the [claimant] capable of performing work existing in significant numbers in the national economy").[2]

## IV. Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent with this decision.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: April 6, 2023

/s/ Karen Frink Wolf
United States Magistrate Judge

---

[2] In light of this conclusion, I need not reach the Plaintiff's other assignments of error.