# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| CHANTAL E., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Docket No. 2:22-cv-00126-NT |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING THE RECOMMENDED DECISION
## OF THE MAGISTRATE JUDGE

On April 6, 2023, the United States Magistrate Judge filed with the Court, with copies to the parties, her Report and Recommended Decision (ECF No. 16) on the Plaintiff's social security disability appeal. The Defendant filed objections to the Recommended Decision on April 20, 2023 (ECF No. 17), and the Plaintiff filed her response on May 4, 2023 (ECF No. 18). I held oral argument on the Defendant's objections on July 10, 2023.

I have reviewed and considered the Recommended Decision, the Defendant's Objections to the Report and Recommended Decision, and the Plaintiff's Response to the Defendant's Objections, together with the entire record, and I have made a *de novo* determination of the matters adjudicated by the Magistrate Judge's Recommended Decision. I concur with the recommendation of the Magistrate Judge to grant remand to the Plaintiff and therefore **AFFIRM** the Recommended Decision.

## STANDARDS OF REVIEW

Under our Local Rules, social security disability cases are automatically referred to a magistrate judge to issue a recommended decision on the merits. D. Me. Loc. R. 16.3(a)(2). When a party files timely objections to the magistrate judge's recommended decision, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*; Fed. R. Civ. P. 72(b)(3).

"[J]udicial review of a Social Security claim is limited to determining whether the [administrative law judge ("**ALJ**")] used the proper legal standards and found facts upon the proper quantum of evidence." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000). The Commissioner's findings as to any fact are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g). A reviewing court "has no authority to reweigh the evidence and substitute its judgment." *Colon v. Sec'y of Health & Hum. Servs.*, 877 F.2d 148, 153 (1st Cir. 1989). Instead, the court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Ortiz v. Sec'y of Health and Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991).

## DISCUSSION

The Plaintiff applied for benefits in November of 2019. Administrative R. 16 (ECF No. 7). After her claim was denied at the initial and reconsideration levels, she

2

requested a hearing before an ALJ. Administrative R. 16. With respect to the Plaintiff's mental residual functioning capacity ("**RFC**"), the ALJ found:

> She is limited to reasoning, math and language skills up to a GED[1] level of three. She is limited to performing only simple, repetitive and routine tasks. She is limited to only nonproduction-paced tasks as to tempo and capacity (*i.e.*, non-assembly line work or work with piece quotas). She is limited to maintaining a persistent effort on only routine tasks. She is limited to only rare interaction with the public; but she may be in the presence of the public. She is limited to only occasional interaction with co-workers and supervisors. She is limited to tolerating only occasional changes in tasks or the work setting and is limited to having to make only routine, work-related decisions.

Administrative R. 22.

In reviewing the ALJ's determination, the Magistrate Judge noted that "no expert opined that the Plaintiff had these specific limitations." R. & R. 7 (ECF No. 16). In particular, the Recommended Decision points to the ALJ's limitations concerning "GED reasoning level three, nonproduction paced work, and only routine changes in the workplace." R. & R. 6. The Magistrate Judge determined that the ALJ, in assessing these limitations, "improperly substituted his judgment for that of the medical experts and relied on his own interpretation of the raw medical evidence." R. & R. 6.

In making a disability determination, the Commissioner must "consider all evidence available in [a claimant's] case record." 42 U.S.C. § 423(d)(5)(B). Under the Social Security Administration's regulations, an ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R.

---

[1] "GED" stands for "General Education Development." Dictionary of Occupational Titles, Fourth Edition, Revised, Appendix C, *available at* 1991 WL 688702.

3

§§ 404.1545(a)(3), 404.1546(c). ALJs no longer need to give special deference to the opinion of a claimant's treating provider or assign evidentiary weight to medical opinions in determining a claimant's RFC. *See* 20 C.F.R. § 404.1520c(a). A Social Security ruling, SSR 96-8p, makes clear that "RFC is an administrative assessment." SSR 96-8p, 1996 WL 374184, at *2. The ruling elaborates on the evidence to be considered:

> The RFC assessment must be based on *all* of the relevant evidence in the case record, such as:
> - Medical history,
> - Medical signs and laboratory findings,
> - The effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication),
> - Reports of daily activities,
> - Lay evidence,
> - Recorded observations,
> - Medical source statements,
> - Effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment,
> - Evidence from attempts to work,
> - Need for a structured living environment, and
> - Work evaluations, if available.
>
> The adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone.

*Id.* at *5. An ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations),"

4

and the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7.

With respect to medical source opinions in the record, the ALJ must "always consider and address" them, and, if his RFC assessment conflicts with a medical opinion, he "must explain why the opinion was not adopted." *Id.* The ALJ also must articulate how persuasive he finds all of the medical opinions and explain how he considered the supportability and consistency of those opinions. 20 C.F.R. § 404.1520c(b). But, as the Magistrate Judge points out, "an ALJ need not adopt a medical opinion in its entirety." *Tabetha S. B. v. Saul*, No. 1:18-cv-00445-JHR, 2019 WL 5866068, at *5 (D. Me. Nov. 8, 2019); *see* R. & R. 6 ("This court has held that an ALJ may not only pick and choose among different experts' opinions but also adopt only a portion of an expert's opinion." (quoting *Tabetha S.B.*, 2019 WL 5866068, at *5)).[2]

---

[2] The Defendant faults the Recommended Decision for citing to *Dustin T. v. Saul*, 1:20-cv-00310-GZS, 2021 WL 3047257 (D. Me. July 20, 2021), *R. & R. adopted*, 2021 WL 3494590 (Aug. 9, 2021). The argument is that *Dustin T.* is the latest in a line of cases that traces back to *Lugo v. Secretary of Health & Human Services*, 794 F.2d 14, 15 (1st Cir. 1986), a case that predates SSA regulations that changed RFC from a medical assessment to an administrative assessment. Def.'s Objs. to the R. & R. and Req. for Oral Arg. ("**Def.'s Objs.**") at 5–7 (ECF No. 17); *see* 56 Fed. Reg. 36,932, 36,934, 36,962 (Aug. 1, 1991); *see also* 56 Fed. Reg. 57,928, 57,943 (Nov. 14, 1991). The Defendant argues that continued reliance on *Lugo*'s proposition—that ALJs as laypersons are not qualified to translate bare medical findings into an RFC assessment—is misplaced after the regulation change. Citing caselaw from other circuits, the Defendant maintains that "prior First Circuit caselaw requiring medical-opinion support for the RFC was misapplied here." Def.'s Objs. at 9. But when pressed at oral argument as to whether the *Lugo* line of cases was no longer good law, counsel for the Defendant demurred. And I note that the First Circuit itself has reiterated the principle at issue many times since the 1991 regulation change. *See Perez v. Sec'y of Health & Hum. Servs.*, 958 F.2d 445, 446 (1st Cir. 1991) ("[A]n ALJ is not qualified to interpret raw medical data in functional terms. We have held, accordingly, that where an ALJ reaches conclusions about claimant's physical exertional capacity without any assessment of residual functional capacity by a physician, the ALJ's conclusions are not supported by substantial evidence and it is necessary to remand for the taking of further functional evidence." (citations omitted)); *Manso-Pizarro v. Sec'y of Health & Hum. Servs.*, 76 F.3d 15, 17–18 (1st Cir. 1996) ("[T]he record contains no analysis of functional capacity by a physician or other expert. Thus, the question whether substantial evidence supports the ALJ's finding . . . depends on a qualitative assessment of

Based on my *de novo* review and having now had the benefit of hearing both parties' in-depth arguments on this issue, I find that the majority of the ALJ's RFC limitations are supported by record evidence. The ALJ limited the Plaintiff to performing only simple, repetitive, and routine tasks that are not production-paced as to tempo and capacity, and limited her to only occasional changes in tasks and only routine, work-related decisions. Administrative R. 22. And those limitations do have support. It appears the ALJ considered the evidence in the record, including lay evidence, reports of daily activities, medical signs, and the medical source statements, and applied his common sense to determine the functional implications of the evidence. *See Gordils v. Sec'y of Health & Hum. Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (noting that the Commissioner is not "precluded from rendering common-sense judgments about functional capacity based on medical findings").

But even if there arguably is substantial evidence to support the above specific limitations, I still agree with the Magistrate Judge's recommendation that the matter should be remanded because I struggle to see where the ALJ found support for his "GED reasoning level three" determination. The ALJ explains that he limited the Plaintiff's reasoning, math, and language skills "up to a GED level of three" to

---

the medical evidence that was before the ALJ. If that evidence suggests a relatively mild physical impairment posing, to the layperson's eye, no significant exertional restrictions, then we must uphold the ALJ's finding; elsewise, we cannot (in the absence of an expert's opinion)."); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ was not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion. . . . As a lay person, [he] was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination." (citations omitted)). So I reject the Defendant's suggestion that the judges of this District are misapplying the caselaw when they continue to cite First Circuit precedent on this point, and until the First Circuit says otherwise, that is the law we are bound to apply.

6

"address the effect complex tasks might have on her functioning." Administrative R. 22, 26. But the ALJ did not cite to any specific evidence, and I have found none, that supports his finding that the Plaintiff could perform at a GED level of three. According to the Plaintiff, the source for this limitation is raw medical data—the IQ and memory test results—which the ALJ is not qualified to interpret.[3] The Defendant during oral argument countered that the ALJ explained his GED level limitation in two footnotes, that Dr. Russell provided an analysis of the raw testing scores by opining that the Plaintiff has average intellectual potential and her test scores and memory were average overall, and that the GED levels are really a vocational consideration rather than a medical one.

The GED scale stratifies "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." Dictionary of Occupational Titles ("**DOT**"), Fourth Edition, Revised, Appendix C, *available at* 1991 WL 688702. The GED scale "is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." *Id.* GED levels "gauge[ ] the minimal ability a worker needs to complete the job's tasks." *Id.* The GED levels represent the ability required to perform the job, ranging from Level 1 (which requires the least ability) to Level 6 (which requires the most).[4] *See id.*

---

[3] The Defendant conceded at oral argument that, had the ALJ interpreted the Plaintiff's bare IQ and memory test results, he likely would have overstepped the bounds of a layperson's competence.

[4] The Defendant is correct that the GED levels usually come into play in the last two steps of the five-step sequential disability determination, when the ALJ compares the claimant's RFC with the physical and mental demands of past relevant work and assesses whether the claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520. But here, the ALJ included a GED level

7

On the face of the record, I fail to see how the ALJ got from the WAIS-IV and WMS-IV tests results to a GED reasoning level three. A person with "03 Level Reasoning Development" is able to:

> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

DOT, Appendix C, 1991 WL 688702. But no evidence explains how the ALJ landed on this level out of the six GED levels. Why not level one or two? Level two, for example, is assigned to those who can "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT, Appendix C, 1991 WL 688702. Dr. Russell's narrative report does nothing to explain this leap from the Plaintiff's numerical test scores to a GED level three finding.[5] Indeed, some case law suggests that such a finding would be inconsistent with the ALJ's simultaneous finding that the Plaintiff is limited to performing only simple, repetitive, and routine tasks.[6] That issue is not before the Court, however. The

---

assessment in his RFC limitations, so the fact that such assessments typically are vocational in nature is beside the point. The ALJ treated it as an RFC limitation, so I do the same.

[5]      Although Dr. Russell's report does provide some limited context for the raw numbers in the form of percentiles and an assessment of whether the Plaintiff's results were low average, average, or high average. *See* Administrative R. 1183–84.

[6]      *See Hall–Grover v. Barnhart,* No. 03–239–P–C, 2004 WL 1529283, at *3–4 (D. Me. Apr. 30, 2004) (R & R *aff'd* May 24, 2004) (a GED reasoning level of 3 is seemingly inconsistent with a limitation to the performance of simple, repetitive tasks); *see also Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (remanding because mental RFC limitation that the plaintiff "retains the attention, concentration, persistence and pace levels required for simple and routine work tasks" appears "inconsistent with the demands of level-three reasoning"); *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (remanding where ALJ failed to ask expert to explain why a person with "simple, routine, or repetitive work" limitation "could nevertheless meet the demands of Level 3 Reasoning"). *But see Welch v. Astrue*, No. 1:11-cv-384-GZS, 2012 WL 3113148, at *7 (D. Me. July 11, 2012), *R & R adopted,* 2012 WL 3113144 (D. Me. July 31, 2012) (joining the various courts that have held that "no conflict

Plaintiff's GED level appears to be unsupported guesswork. The reasoning that the Defendant points to—the ALJ's footnotes explaining that the limitations account for the effect of stress on her overall functioning and that, "[w]hile the claimant has an associate degree, [the ALJ] included this [GED level three] limitation to reduce her stress level, since complex tasks could reasonably be found to result in increased stress for her"—do not adequately plug the evidentiary hole. There is no evidence that the ALJ could have used to conclude that imposing that limitation would result in reducing her stress level. And the only evidence that supports an RFC finding that the Plaintiff could function at a GED level three is the Plaintiff's test scores and the parentheticals describing each as average, high average, or low average.

I therefore agree with the Magistrate Judge's observation that the ALJ "seemed to rely in part on his own interpretation of the functional implications of Dr. Russell's intelligence and memory testing." R & R 6. The ALJ's GED-level determination of what the Plaintiff is capable of given her IQ and memory test results goes beyond a common-sense judgment. Indeed, the fact that a psychological consultant was engaged at the reconsideration level to examine the Plaintiff and perform the cognitive tests further confirms that such an evaluation requires some medical expertise and is not a matter of common sense. Because there is no substantial evidence in the record to support the ALJ's GED-level-three limitation on the Plaintiff's RFC, which in turn underlies his finding that the Plaintiff was capable

---

exist[s] between a limitation to 'simple and unskilled' work and a GED level 3 classification" (citation omitted)).

of performing work existing in significant numbers in the national economy, I concur with the Magistrate Judge's conclusion that remand is appropriate.

## CONCLUSION

For the foregoing reasons, I **VACATE** the Commissioner's Decision and **REMAND** the matter for further proceedings consistent with this decision.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 10th day of August, 2023.